IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL KING,

                          Plaintiff,

        v.

ANTHONY LUMPKIN, Individual
and in his official capacity as a police
officer for the City of Jonesboro,
Georgia and as a resource officer for
Clayton County Public Schools,

                        Defendant.

1:11-cv-0549-WSD

## <u>OPINION AND ORDER</u>

This matter is before the Court on Anthony Lumpkin's ("Lumpkin" or "Defendant") Renewed Motion to Dismiss Plaintiff's Complaint in Lieu of Answer [20] and Renewed Motion to Dismiss [22].

## I.     BACKGROUND

### A.    <u>Georgia House Bill 1302</u>

Georgia House Bill 1302[1] was enacted on April 24, 2008, "[t]o provide a code of ethics for the Clayton County School System; to provide for prohibited practices; to provide for disclosure; to provide for an ethics commission; . . . to

---

[1] House Bill 1302 is not codified in the Georgia Code.  The official version is available on the Georgia General Assembly website at: http://www1.legis.ga.gov/legis/2007_08/pdf/hb1302.pdf.

provide for complaints; to provide for hearings and actions; to provide for sanctions; . . . and for other purposes."  2008 Ga. Laws 400, pmbl. ("House Bill 1302").  House Bill 1302 prohibits any elected official of the Clayton County School System, to include the Clayton County Board of Education (the "Board"), from representing "private interests in any action or proceeding against the school system or any office, department, or agency thereof."  Id., § 2(a)(4).  House Bill 1302 states that elected officials may not:

> Engage in any business or transaction with or have a financial or other personal interest, direct or indirect, in the affairs of the Clayton County School System which would result in a financial benefit, except for a financial benefit of a nominal or incidental amount, to the official, appointed officer, employee, or relative of such person or which would tend to impair the independence of judgment or action in the performance of official duties;

> Engage in or accept private employment from or render services for private interests when such employment or service is incompatible with the proper discharge of such person's official duties or would tend to impair his or her independence of judgment or action in the performance of his or her official duties;

Id., §§ 2(a)(1), 2(a)(2).

House Bill 1302 further provides that "[a]ny citizen eligible to vote in Clayton County or any employee of the Clayton County School System may file a complaint alleging a violation of the standards established by [House Bill 1302] or

other applicable state or federal law by filing it with the commission."  Id.,

§ 4(e)(1).

House Bill 1302 requires the Clayton County School System Ethics

Commission (the "Commission") to establish guidelines relating to sanctions for

violations of House Bill 1302, and authorizes the Commission to remove elected

members of the Board for ethical violations.  Id., §§ 4(d)(5), 4(h).  Under the

guidelines adopted by the Commission, violations of Sections 2(a)(1), 2(a)(2), and

2(a)(4) of House Bill 1302 are considered Class 2 violations requiring the removal

of offenders from their positions in the Clayton County School System.  (Ex. A to

Def.'s Renewed Mot. to Dismiss Pl.'s Compl. in Lieu of Answer at 9).

B.    Plaintiff's removal from the Board and this action

On August 25, 2008, Plaintiff, a Georgia attorney,[2] was sworn in as an

elected member of the Board, representing District 4.  (Id. at 2).  On November 24,

2008, an ethics complaint (the "Ethics Complaint") was filed with the Commission

against Plaintiff.  (Id. at 3).  On February 11, 2009, the Commission held a public

hearing on the claims alleged in the Ethics Complaint.  (Id. at 1-2).

On February 16, 2009, the Commission issued its Order on the Ethics

Complaint.  (Id. at 5).  The Commission found that Plaintiff violated Sections

---

[2] Plaintiff represents himself in this action.

2(a)(1), 2(a)(2), and 2(a)(4) of House Bill 1302: (1) by representing a litigant in a suit against the Clayton County Public Schools and certain of its employees while he was a member of the Board; (2) by failing to disclose a financial interest related to the operation of the Clayton County Public Schools; and, (3) by filing a lawsuit in the Superior Court of Clayton County against the Clayton County Public Schools and Board asking the court to review the actions of the Board in censuring him for representing a party against the Board and for failing to disclose an adverse financial interest.  (Id.).  The Commission found that these actions constituted Class 2 violations and ordered that Plaintiff immediately be removed from his position as a Board member.  (Id. at 10).

On February 23, 2009, Plaintiff "appeared at the central office for the Clayton County Public Schools for the 7:00 p.m. school board meeting."  (Compl. ¶ 4).  Prior to the start of the meeting, Plaintiff claims that Defendant physically removed him from his seat on the Board, escorted him out of the building, and directed him not to return to his seat until he appealed his removal by the Commission.  (Id. ¶ 5).

On February 23, 2011, the last day before the statute of limitations for his claims under 42 U.S.C. § 1983 expired, Plaintiff filed his Complaint against Defendant in Defendant's individual capacity and in his official capacity, as a

police officer for the City of Jonesboro and a resource officer for Clayton County Public Schools.

The Court has reviewed Plaintiff's Complaint and concludes that Plaintiff asserts four claims: (1) a claim under 42 U.S.C. § 1983 in which Plaintiff alleges he suffered a false arrest and wrongful removal from a Clayton County School Board meeting in violation of his constitutional rights under the Fourth Amendment; (2) two claims under 42 U.S.C. § 1983 for violations of his constitutional rights under the Fourteenth and Fifteenth Amendment, respectively, as a result of his removal from a Clayton County School Board meeting; and, (3) a claim under 42 U.S.C. § 1983 for violations of his "federal constitutional and statutory rights" as a result of Defendant's enforcement of House Bill 1302, which was not precleared by the Department of Justice as Plaintiff claims was required by Section 5 of the Voting Rights Act of 1965 ("Voting Rights Act"), as amended, 42 U.S.C. § 1973 et seq.  (Id. ¶¶ 6-10).  Plaintiff seeks damages, costs, attorney's fees, injunctive relief, and a declaratory judgment that House Bill 1302 is void and violates the United States Constitution, the Georgia Constitution, and the Voting Rights Act.[3]  (Id. at 5-6).

_____

[3] In deciding a motion to dismiss, "a court limits its consideration to the pleadings and exhibits attached thereto."  Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citations omitted).  If matters outside the pleadings are

The 120-day period within which Plaintiff was required to serve Defendant with the Complaint he filed on February 23, 2011, expired on June 23, 2011.  Fed. R. Civ. P. 4(m).

On July 15, 2011, Defendant, in his individual and official capacity as a police officer for the City of Jonesboro, filed his Motion to Dismiss in Lieu of Answer based on insufficient service of process [2].  Alternatively, he requested that the Court dismiss the claims in the Complaint on the grounds that they failed to state a claim upon which relief can be granted, that the claims asserted against Defendant in his individual capacity were barred by qualified immunity, and that House Bill 1302 did not involve voting practices and thus Section 5 of the Voting Rights Act did not apply.

---

presented for consideration, a court generally must exclude the document or else convert the motion to one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(c).  A document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed.  Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (explaining that "'[u]ndisputed' in this context means that the authenticity of the document is not challenged"); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and these documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.").  The Order of the Clayton County School System Ethics Commission and House Bill 1302 are central to Plaintiff's claims and have been attached as exhibits to Defendant's Renewed Motion to Dismiss Plaintiff's Complaint in Lieu of Answer [20] and Renewed Motion to Dismiss [22].  No party has disputed the authenticity of any of the documents attached to the Renewed Motions to Dismiss.

Also on July 15, 2011, Defendant, in his official capacity as a resource officer for Clayton County Public Schools, filed his Motion to Dismiss in Lieu of Answer based on insufficient process and insufficient service of process [3].  In the alternative, he requested that the Court dismiss all claims against him in his official capacity as a resource officer for Clayton County Public Schools because Plaintiff's Complaint failed to state a claim upon which relief can be granted and that House Bill 1302 did not involve voting practices and thus Section 5 of the Voting Rights Act did not apply.

On August 1, 2011, Plaintiff responded to Defendant's Motions to Dismiss [6].  In his response, Plaintiff offered additional facts regarding the circumstances relating to service of process upon Defendant on June 22, and June 24, 2011, and claimed there was good cause to extend the period for service of process based on Defendant's refusal to accept service, and Plaintiff's belief that Defendant's agent had been served.

Plaintiff filed three Proof of Service forms in this case.  In each of them, Plaintiff's process server signed under penalty of perjury that the information set forth in the Proofs of Service was true.  Two of the Proofs are dated July 27, 2011, and were filed on August 2, 2011.  In one ("First Proof of Service"), the process server stated he tried, on June 22, 2011, to serve Defendant personally but that

Defendant "refused to accept [the] complaint and summons." (July 27, 2011, Proof of Service [7]). The process server also wrote on the First Proof of Service that he had served "Lieutenant V. Wright," on June 22, 2011, representing further that Lieutenant Wright was "designated by law to accept service of process on behalf of" Defendant.[4] (Id.).

In the second Proof of Service form ("Second Proof of Service"), the process server stated that, on June 24, 2011, he "personally served the summons on the individual" but failed to state where service was made, as required by the Proof of Service form. (July 27, 2011, Second Proof of Service [8]). There are two entries on the Second Proof of Service, one in the "other" section and one in the "note" section, which state that Defendant previously refused to accept service on June 22, 2011. (Id.).

An "Amended" Proof of Service ("Amended Second Proof of Service") was filed by Plaintiff on August 30, 2011, apparently in an effort to correct his omission in the Second Proof of Service regarding where Defendant was served on June 24, 2011. (July 27, 2011, Amended Second Proof of Service [12]). The

---

[4] A note at the bottom of the First Proof of Service states: "Note: City of Jonesboro, police watch commander for June 22, 2011 stated she was authorized to accept legal process on behalf of Anthony Lumpkin, a Jonesboro police lieutenant." (July 27, 2011, Proof of Service). It is unclear from the First Proof of Service that Lieutenant V. Wright was the watch commander on June 22, 2011.

Amended Second Proof of Service is identical to the Second Proof of Service except "Jonesboro Police Department" was added as the location at which Defendant was allegedly served on June 24, 2011.[5]  (Id.).

On August 15, and August 16, 2011, Defendant filed his reply briefs in support of his Motions to Dismiss [9, 10].

On August 30, 2011, Plaintiff—apparently because his initial filing included pages that were out of order and cut off at the top and bottom margins—filed an amended response to Defendant's Motions to Dismiss.  The Amended Response does not appear to differ from the response he filed on August 1, 2011 [11]. On September 6, and September 9, 2011, Defendant noted that Plaintiff's Amended Response was identical to his original response and filed reply briefs out of "an abundance of caution" that reiterated his previous arguments [13, 14].

On October 20, 2011, Plaintiff filed his Motion to Stay Discovery and Filing of Joint Preliminary Planning Report until the Court ruled on Defendant's pending Motions to Dismiss [16].

On February 13, 2012, the Court found good cause for Plaintiff's failure to properly serve Defendant within the 120-day period for service; extended the time

---

[5] The Second Proof of Service and the Amended Second Proof of Service filed on August 2, and August 30, 2011, respectively, both also state: "The Mayor of Jonesboro also refused to accept process on [June 22, 2011]."  (July 27, 2011, Second Proof of Service; July 27, 2011, Amended Second Proof of Service).

for service; found sufficient service of process was made by Plaintiff on June 24, 2011; denied Defendant's Motions to Dismiss in part "regarding his claims of insufficient process and insufficient service of process;" and dismissed "without prejudice Defendant's remaining arguments in the Motions to Dismiss that Plaintiff has failed to state a claim upon which relief may be granted, that Defendant is entitled to qualified immunity, and that House Bill 1302 does not involve voting practices and thus Section 5 of the Voting Rights Act does not apply." (Order of Feb. 13, 2012, at 16-19).

In ruling on Defendant's Motions to Dismiss, the Court noted that Plaintiff had not served notice on, and this action was not certified to, the Attorney General of Georgia as required by Federal Rule of Civil Procedure 5.1. (Order of Feb. 13, 2012, at 18; Compl. at 5-6).[6] The Court ordered Plaintiff to "serve notice and a copy of all his pleadings on the Attorney General of Georgia no later than February 20, 2012, as required by Federal Rule of Civil Procedure 5.1(a)(2)." (Order of Feb. 12, 2012, at 19).

On February 13, 2012, the Court also granted Plaintiff's Motion to Stay Discovery and Filing of Joint Preliminary Planning Report [16] "until such time as

---

[6] The Court noted that Defendant was not a state officer and the suit by Plaintiff against him in his official capacities as a police officer for the City of Jonesboro and resource officer for the Clayton County Public Schools did not exempt Plaintiff from the requirements of Rule 5.1. Fed. R. Civ. P. 5.1(a)(1)(B).

the Attorney General of Georgia intervenes in this action, gives notice that he does not intend to intervene, or the time to intervene expires" and granted Defendant leave "to refile his motions to dismiss after the Attorney General of Georgia intervenes in this action, gives notice that he does not intend to intervene, or the time to intervene expires."  (Id. at 20).

On February 27, 2012, Plaintiff filed his Motion to Extend Time for Serving Attorney General [19] and claimed that, due to medical problems that interfered with his vision, he did not receive, until February 24, 2012, notification of the Court's February 13, 2012, Order that directed Plaintiff to serve the Attorney General by February 20, 2012.  (Pl.'s Mot. to Extend Time for Serving Attorney General at 1).  On February 28, 2012, the Court granted Plaintiff's request and Plaintiff served the Attorney General for the State of Georgia.

On May 8, 2012, after the time for the State of Georgia to intervene in this action expired without it joining this action, Defendant, in his individual capacity and official capacity as a police officer for the City of Jonesboro, filed his Renewed Motion to Dismiss Plaintiff's Complaint in Lieu of Answer [20] on the grounds that Plaintiff's Complaint fails to state a claim upon which relief may be granted and that House Bill 1302 does not implicate voting and thus does not implicate Section 5 of the Voting Rights Act of 1965.

On May 9, 2012, Defendant, in his official capacity as a resource officer for Clayton County Public Schools, filed his Renewed Motion to Dismiss [22] on the grounds that Plaintiff's Complaint fails to state a claim upon which relief may be granted and House Bill 1302 does not implicate the Voting Rights Act.

On June 5, 2012, after receiving an extension of time, Plaintiff filed his Response to Defendant's Renewed Motions to Dismiss [24].  On June 11, and June 21, 2012, Defendant filed his reply briefs.

## II.   DISCUSSION

### A.   <u>Standard on motion to dismiss</u>

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled.  Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  <u>Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).  In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and considers the allegations in the complaint in the light most favorable to the plaintiff.  <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1295 (11th Cir. 2007).  Ultimately, the complaint is required to contain "enough facts to state a

claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).[7]

To state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 557). "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or

---

[7] The Supreme Court explicitly rejected its earlier formulation for the Rule 12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Twombly</u>, 550 U.S. at 577 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). The Court decided that "this famous observation has earned its retirement." <u>Id.</u> at 563.

legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).[8]

   B.   Plaintiff's 42 U.S.C. § 1983 claims

Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.   While not a source of substantive rights, Section 1983 provides a method for vindicating federal rights conferred by the Constitution and federal statutes.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

To prevail in an action under Section 1983, a plaintiff must make a *prima facie* showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.  Marshall Cnty. Bd. of Educ., 992 F.2d at 1174; Harvey v. Harvey, 949 F.2d

---

[8] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555.

1127, 1130 (11th Cir. 1992) ("A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States.").

> 1.   *Qualified immunity for Defendant on Plaintiff's individual capacity claims*

Qualified immunity protects government officials who perform discretionary functions from suits in their individual capacities, unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted). "A government official who is sued under § 1983 may seek summary judgment [or dismissal] on the ground that he is entitled to qualified immunity." See Benton v. Hopkins, 190 F. App'x 856, 858 (11th Cir. 2006).

To be protected by qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the

allegedly wrongful acts occurred."  <u>Lee</u>, 284 F.3d at 1194 (internal quotation marks omitted).  Here, it is undisputed that Defendant acted within his discretionary authority as a police officer for the City of Jonesboro and as a resource officer for Clayton County Public Schools by escorting Plaintiff, who had been removed from office by the Commission for ethical violations pursuant to House Bill 1302, from a hearing when Plaintiff refused to leave and at which he became confrontational.[9]  (Compl. ¶¶ 5-8).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  <u>Lee</u>, 284 F.3d at 1194.  "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation."  <u>Hope</u>, 536 U.S. at 736 (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), <u>receded from by</u> <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009), <u>declined to extend by</u> <u>Fennell v. Gilstrap</u>, 559 F.3d 1212 (11th Cir. 2009)).  If a constitutional right would have been violated under the plaintiff's version of the facts, "a plaintiff must [then] show that the right violated was clearly established."  <u>Fennell</u>, 559 F.3d at 1216.

---

[9] Defendant also advised Plaintiff not to take his seat at meetings until he appealed the Commission's decision to remove him.

Determining whether a constitutional right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable state actor that his conduct was unlawful in the situation he confronted." Id. at 202. Saucier instructs that "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment [or dismissal] based on qualified immunity is appropriate." See id.; see also Sarver v. Jackson, 344 F. App'x 526, 528-29 (11th Cir. 2009) (dismissal of Section 1983 claims appropriate on grounds that defendants are entitled to qualified immunity under Saucier).

Assuming that Plaintiff's version of the facts is true, he could establish a constitutional violation by Defendant in removing him from the Board meeting if Defendant lacked arguable probable cause to believe Plaintiff was committing a crime by his disruption of a public meeting and refusal to leave his former Board seat following his removal from that position by the Commission pursuant to a valid law passed by Georgia General Assembly. See Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998). Plaintiff offers only an unsupported allegation that Defendant lacked probable cause to believe a crime was being

17

committed and that Defendant thus was not entitled to escort Plaintiff from Plaintiff's seat in the discretionary performance of his duties.

This claim is implausible and unfounded. The facts, which are not contested, support that Defendant legitimately and reasonably believed he was entitled, if not obligated, to take the action he did. Here, the Commission had taken action, pursuant to a law passed by the Georgia General Assembly, regarding an ethics complaint against Plaintiff and ordered that he be removed from his position on the Board. Defendant knew this order had been issued by the Commission. Plaintiff engaged in a calculated, confrontational attempt to attend the Board meeting after he was removed. This conduct caused disruption to the Board meeting and Defendant acted to remove Plaintiff from the meeting. The Court finds Plaintiff cannot establish a constitutional violation based on these undisputed facts. Defendant's actions at the Board meeting were based on probable cause and a reasonable belief that Plaintiff was violating Georgia law by attempting, after removal, to assume his seat and by refusing to leave following his removal from his position by the Commission. See, e.g., O.C.G.A. §§ 16-7-21(b), 16-11-39; House Bill 1302.

Assuming *arguendo* that Plaintiff could make out a constitutional violation based on a false arrest or some other constitutional violation, Plaintiff has not

alleged—and it would be implausible even to suggest—that Defendant believed his discretionary decision to remove Plaintiff from the Board meeting was clearly unlawful or violated an established constitutional right.

The Court finds, based on Plaintiff's version of the facts in his Complaint, that Defendant's conduct was reasonable because Defendant had probable cause to believe that a valid removal order was being violated, and that the law did not put him on notice that his conduct was clearly unlawful or violated an established constitutional right. Defendant is entitled to qualified immunity and Plaintiff's claims against him in his individual capacity are dismissed.

### 2. *Failure to state a claim on official capacity claims*

"A claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1309-10 (11th Cir. 2009). A local government or government entity, such as the City of Jonesboro or the Clayton County Public Schools, may not be held liable in a Section 1983 action on a *respondeat superior* theory. City of Canton v. Harris, 489 U.S. 378, 386-87 (1989); Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978); Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

A local government or government entity is only liable under Section 1983 for the actions of its employees "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ."  See Monell, 436 U.S. at 694; Grech, 335 F.3d at 1329 (quoting Marsh v. Butler Cnty., 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc)) ("A [government entity] is 'liable under section 1983 only for acts for which [the government entity] is actually responsible.'").  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.  A custom is a practice that is so settled and permanent that it takes on the force of law."[10]  Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005) (quotation and citations omitted).

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Pembaur v. City of Cincinnati, 475 U.S.

---

[10] A "threshold identification of a custom or policy" should initially be made to ensure that a municipality is "held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality."  McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004).

469, 483 (1986); see also Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994) ("Only those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability.").  "State and local positive law determine whether a particular official has final policymaker authority for § 1983 purposes."  Cooper, 403 F.3d at 1221.

For Plaintiff to prevail on his constitutional claims against Defendant in his official capacity, he "must show that a deprivation of constitutional rights occurred as a result of an official government policy or custom."  See id.; see also Monell, 436 U.S. at 690-91 (holding that a Section 1983 action against a governmental body may be brought where the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or those "visited pursuant to governmental custom").

Here, Plaintiff has failed to state a claim against Defendant in his official capacity because his Complaint does not allege a policy or custom in existence that violated his constitutional rights or any allegation that Defendant's actions were taken pursuant to a policy or custom established by the City of Jonesboro or the Clayton County Public Schools.  Plaintiff also has failed to identify "those municipal officers who have final policymaking authority" concerning the act

alleged to have caused his claimed constitutional violation.  See <u>Church</u>, 30 F.3d at 1342.  The Court finds Plaintiff's claims against Defendant in his official capacity are also required to be dismissed.

> 3.     *Plaintiff's request for prospective injunctive relief*

"[T]o have standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future."  <u>Wooden v. Bd. of Regents of Univ. Sys. of Ga.</u>, 247 F.3d 1262, 1283 (11th Cir. 2001).

> Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury.  Logically, "a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past."  Although "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," . . .  "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."

<u>Id.</u> at 1284 (quoting <u>Church</u>, 30 F.3d at 1337) (internal citation omitted).

The Eleventh Circuit "has often emphasized that to obtain prospective injunctive relief a plaintiff must show that he faces a substantial likelihood of injury in the future."  <u>Id.</u>

Plaintiff has requested injunctive relief enjoining Defendant from enforcing House Bill 1302, but has not alleged that there is any likelihood that the incident

that gave rise to Plaintiff's removal will reoccur.  To the extent Plaintiff seeks

prospective injunctive relief under Section 1983 against Defendant enjoining him

from enforcing House Bill 1302 due to its unconstitutionality or its failure to have

been precleared, the Court finds that he lacks standing to do so and fails to state a

claim for prospective injunctive relief under Section 1983 because Plaintiff has not

alleged that there is any likelihood of a recurring injury.  See id. at 1283-85.

Indeed, in the sixteen (16) months since this case was filed, there have been no

further removal encounters.[11]

      C.     Plaintiff's request for a declaratory judgment regarding House Bill
           1302 under 28 U.S.C. § 2201

      A party asserting a claim under the Declaratory Judgment Act

("DJA") must demonstrate that the claim presents an "actual controversy

---

[11] The Court also finds that Plaintiff's asserted violations of constitutional rights under the Fourteenth and Fifteenth Amendments fail to state a claim because the right to hold public office is not a fundamental right protected by the Constitution and Plaintiff has not alleged any disparate treatment based on a suspect classification, has not alleged a deprivation of a right secured under the Constitution or federal law, and has not made any allegation of a discriminatory purpose or effect in the enforcement of the removal order by the Commission or House Bill 1302.  See Cook v. Randolph Cnty., 573 F.3d 1143, 1152 (11th Cir. 2009); Burton v. City of Belle Glade, 178 F.3d 1175, 1188-89 (11th Cir. 1999); Smith v. Winter, 717 F.2d 191, 198 (5th Cir. 1983) (citing Kirksey v. Bd. of Supervisors, 554 F.2d 139, 142 (5th Cir. 1977), superseded by statute as stated in League of United Latin Am. Citizens, Council No. 4434 v. Clements, 999 F.2d 831, 866 (5th Cir. 1993)) ("the right to vote stops short of the right to hold office"); Kuhn v. Thompson, 304 F. Supp. 2d 1313, 1334-35 (M.D. Ala. 2004) .

within the jurisdiction of the Court."  See 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); see also Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95 (1993) ("[A] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy."); Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1347 (11th Cir. 1999) ("Consistent with the 'cases' and 'controversies' requirement of Article III, the [DJA] . . . specifically provides that a declaratory judgment may be issued only in the case of an 'actual controversy.'").  To demonstrate an actual controversy arising under federal law, a party must allege facts showing a real and immediate dispute between the parties justifying the resort to declaratory relief.  See Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985) ("The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.").

24

To determine if an actual controversy exists justifying resort to declaratory relief, a district court looks to the facts as they existed at the time the action was filed to assess, absent the availability of declaratory relief, whether a movant's well-pleaded complaint for declaratory relief alleges a claim that could be brought as a coercive action in federal court.  See Household Bank v. JFS Grp., 320 F.3d 1249, 1257, 1259 (11th Cir. 2003) (citing Gulf States Paper Corp. v. Ingram, 811 F.2d 1464, 1467 (11th Cir. 1987), abrogated on other grounds by King v. St. Vincent's Hosp., 502 U.S. 215, 217 (1991)); see also Stuart Weitzman, LLC v. Microcomputer Res., Inc., 542 F.3d 859, 862 (11th Cir. 2008) ("Our inquiry is thus whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court.  To do this, we must analyze the assumed coercive action by the declaratory judgment defendant.") (internal quotations omitted).

Here, Plaintiff relies upon the Voting Rights Act as a basis for seeking declaratory relief and a judgment under 28 U.S.C. § 2201 that House Bill 1302 is invalid and Defendant should be enjoined from enforcing it.

Congress passed the Voting Rights Act in 1965 to end the practice of racial discrimination in voting in various Southern states, including Georgia.  See South Carolina v. Katzenbach, 383 U.S. 301, 315, 329-30 (1966).  Section 5 of the Act

assists in achieving this goal by "suspend[ing] new voting regulations pending scrutiny by federal authorities to determine whether their use would violate the Fifteenth Amendment."  Id. at 334.  Changes in the voting process of a covered state have to be precleared by the Department of Justice for the change to be implemented, "so long as those changes reflect policy choices made by state or local officials."  Young v. Fordice, 520 U.S. 273, 284 (1997) ("minor, as well as major, changes require preclearance"); see also Allen v. State Bd. of Elections, 393 U.S. 544, 566 (1969) (noting that "Congress intended to reach any state enactment which altered the election law of a covered State in even a minor way").

"The Voting Rights Act does not explicitly grant or deny private parties authorization to seek a declaratory judgment that a State has failed to comply with the provisions of the Act."  Id. at 554-55.  A private party, as well as the United States, has standing to bring actions against "States and the subdivisions" subject to the provisions of Section 5 to "seek a declaratory judgment that a new state enactment is governed by § 5," and, if "the State has failed to submit the covered enactment for § 5 approval, the private party has standing to obtain an injunction against further enforcement, pending the State's submission of the legislation pursuant to § 5."  See id. at 555-57; see also 42 U.S.C. § 1973j(d), (f).

26

Plaintiff's Voting Rights Act claim is necessarily a claim seeking declaratory and injunctive relief against Clayton County and perhaps the State of Georgia.[12]  In the absence of his Section 1983 claims, Plaintiff cannot establish the existence of an actual case or controversy involving a Voting Rights Act claim against Defendant because Defendant is not a state officer, is not a representative of any governmental entity, was not involved in the passage of House Bill 1302, and was not involved in any policy decision by the State of Georgia or any of its political subdivisions to enforce House Bill 1302.  Plaintiff's claim for a declaratory judgment under 28 U.S.C. § 2201 against Defendant thus must be dismissed because Plaintiff's Complaint seeking declaratory relief does not allege

---

[12] The Court notes that House Bill 1302 is not a change affecting voting that is covered by the preclearance requirements of Section 5. See Young, 520 U.S. at 284.  House Bill 1302 establishes a code of ethics for elected and nonelected employees of the Clayton County School System.  House Bill 1302 does not create new voting qualifications, prerequisites to voting, or affect voting in any discernible manner.  Assuming *arguendo* that Plaintiff had properly brought his Voting Rights Act claim against the State of Georgia or one of its political subdivisions instead of Defendant, the Court would find that Plaintiff fails to state a claim under Section 5 because he has not challenged a voting practice and his assertion that House Bill 1302 pertains to voting is without merit and frivolous. See Kuhn, 304 F. Supp. 2d at 1333 n.22, 1336-37 (citing Smith, 717 F.2d at 197) ("To establish a claim under the Voting Rights Act, it is not sufficient to allege that a removal procedure constitutes a voting practice or procedure and that irregularities transpired.").

a Section 5 Voting Rights Act claim against Defendant that could be brought as a coercive action in federal court.[13],[14]  See Household Bank, 320 F.3d at 1257, 1259.

## III.   CONCLUSION

For the foregoing reasons,

---

[13] The Court has considered whether it is required to provide Plaintiff—to the extent it must do so for an attorney proceeding *pro se*—an opportunity to amend his Complaint prior to dismissal and concludes that his claims are without merit and amendment would be futile.  See Azar v. Nat'l City Bank, 382 F. App'x 880, 885 (11th Cir. 2010) (citing Olivares v. Martin, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977)) (licensed attorneys proceeding *pro se* not entitled to have pleadings liberally construed); Taylor v. McSwain, 335 F. App'x 32, 33 (11th Cir. 2009) (error to dismiss complaint by a *pro se* litigant with prejudice without first giving the plaintiff an opportunity to amend the complaint if a more carefully drafted complaint might state a claim).

[14] The Court notes that 42 U.S.C. § 1973c states that an action brought under Section 5 of the Voting Rights Act "shall be heard and determined by a court of three judges in accordance with the provisions of" 28 U.S.C. § 2284.  Section 2284(b) provides that a single judge may determine that three judges are not required and dismiss complaints that are wholly insubstantial, completely without merit, frivolous, essentially fictitious, or determined by prior case law.  See Bailey v. Patterson, 369 U.S. 31, 33 (1962); League of United Latin Am. Citizens (LULAC) of Tex. v. Texas, 113 F.3d 53, 55 (5th Cir. 1997); United States v. Saint Landry Parish Sch. Bd., 601 F.2d 859, 863 (5th Cir. 1979); Broussard v. Perez, 572 F.2d 1113, 1118 (5th Cir. 1978), cert. denied, 439 U.S. 1002 (1978).  The Court finds a three-judge court is not required because Plaintiff has not asserted a cognizable Section 5 claim against the State of Georgia or any of its political subdivisions, and, to the extent Plaintiff has alleged a Voting Rights Act claim against Defendant under 28 U.S.C. § 2201, his claims are completely without merit and frivolous.

**IT IS HEREBY ORDERED** that Defendant's Renewed Motion to Dismiss Plaintiff's Complaint in Lieu of Answer [20] and Renewed Motion to Dismiss [22] are **GRANTED**.

**SO ORDERED** this 12th day of July, 2012.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE